which is number 18-12089, United States v. Brigith Diana Gomez. Mr. Lopez. Thank you, Your Honor. Good morning. Judge Jordan, may it please the court. Ms. Gomez was convicted on five separate counts in the district court below and with the court's permission I'd like to proceed sort of in a backward order starting with count five which encompasses both the sufficiency and the jury instruction and then kind of work backwards unless the court has any questions on the other issues in the interim. Count five, Ms. Gomez was convicted of interstate travel in the aid of racketeering and we have argued both that the evidence that was presented by the government was insufficient to sustain a conviction on that count but we also argued in conjunction with that that there was an error by the district court that the defense requested a specific instruction regarding the mens rea on that offense that the district court improperly denied that. It was an accurate statement of the law. It wasn't covered by any other offense and it went into an essential element which was the mens rea and allowed the government essentially to convict Ms. Gomez with the incorrect mens rea. Your position, I take it, is that when the government charges a violation of section 1952, this particular subsection, then you have to not only instruct the jury on the elements of the state law offense but the jury has to find the elements of that state law offense satisfied beyond a reasonable doubt. Well, your honor, it's not the elements in general. It's not the labeling of the offense. Specifically to this case, it's the mens rea and mens rea is something that is special. For example, in federal law, when you charge a conspiracy, you don't have to charge, as the government has pointed out in the cases it cited, you don't have to charge all the elements of the substantive offense but this court has held that when you're charging and the substantive offense has a higher mens rea, then the mens rea for the conspiracy is driven by that substantive offense. It's similar to the state court for burglary. Burglary is the entry of a home, unlawful entry into a home with the intent to commit a felony therein. The mens rea required for that specific felony drives the burglary and drives the conspiracy in federal court. The same is true of the Travel Act, especially given the history of the Travel Act and the courts have been skeptical or at least cautious that the federal offense. How is this case different from United States versus Conway as far as the elements of the state crime? Well, we would differentiate it based on the mens rea. So in Conway, in Nardello, what the courts were talking about there were really labels. You know, is something arson or is it a bombing? Is that sufficient? Is it bribery? Is it extortion? So those elements going to the defense, the courts have felt is not necessary. But when you talk about mens rea, that is different. So here, when you're talking about did Ms. Gomez travel into interstate commerce as charged by the grand jury in violation of this specific statute and that specific statute has been held to require a higher mens rea, not just legal malice but actual malice, then the jury has to be instructed that they must find actual malice. The jury has to find that there is actual malice in order for that to be a proper conviction of traveling interstate commerce to violate this specific Florida statute. So under your theory, the government, the jury had to find, had it been properly instructed, the jury had to find first that for purposes of the federal statute Ms. Gomez acted knowingly and willfully, right? And then separately that if she was traveling in aid of a Florida extortion offense that she acted with ill will, hatred, spite or evil intent. That's correct, Your Honor. I believe that the instruction that was requested by the defense specifically spelled that out and it was supported by state law. There was a 5th District Court of Appeals case and what the 5th District said was, actually the 5th District said, you know, it left to our own accord. We probably would have held just that the only thing required is legal malice. But it did look to the Florida Supreme Court and several Florida Supreme Court decisions and noted that it had to and it was following Supreme Court, Florida Supreme Court law in holding that the legal malice. And in fact, in that case, they certified that question to the Supreme Court. As of, I believe it was yesterday or the day before when I checked, I don't think the Supreme Court had had resolved that issue because there are other District Courts of Appeals that had, without citing those cases, had simply held that legal malice was sufficient and there was no requirement for actual malice. Can I ask you about one more case before you move on to the other? Certainly, Your Honor. United States v. Prince, which states, and it doesn't address the mens rea issue, but states that you don't generally have to get into the elements of a state law offense under Section 1952. How does that case stack up with respect to your argument? I guess our argument would survive that case, Your Honor, and I would point to federal law concerning conspiracy. So federal law and conspiracy, once again, when you're charging a conspiracy, similar, you don't have to charge the element of the substantive offense. But when you're talking about mens rea, that mens rea does have to be found by the jury because when you're conspiring to commit a specific offense, that specific offense is what drives the mens rea. And I would cite the court, I don't think I cited it in my brief, but I would cite United States v. Wanksia Mann, that's 891 F3rd 1253 from the 11th Circuit, 2018. That case dealt with a conspiracy to ... What's the name of the case again, I'm sorry? It's a kind of a strange name. Wanksia Mann, and I'll spell it, W-E-N-X-I-A, that's the first word. M-A-N is the second word, I believe is the defendant's last name. Thank you. But that dealt with a conspiracy to export defense articles without a proper license. That offense requires a very heightened mens rea. It's willful, but it's not only willful in that the government would have to prove that the defendant knew that what they were doing was against the law. The government in those cases has to prove that the defendant intentionally violated known legal duty. So it's a higher willfulness requirement. And in that case, this court held that when you were charging a conspiracy, in order to prove the conspiracy, you had to charge a criminal violation of a known legal duty. And so that would, again, apply here. So when you're charging the Travel Act, and you're charging, as the grand jury did in this case, a specific statute that requires a higher mens rea, that mens rea has to be instructed to the jury and has to be found by the jury. And again, on the jury instruction issue, the law is clear. Here, the jury instruction was inaccurate. It wasn't covered by any other instruction. And it allowed the government to convict Ms. Gomez on a lower mens rea standard. Do any of the 1952 cases from the other circuits address this mens rea issue? Or is this sort of new? I think most of the cases that I cited and that the government cited talk about elements. I don't think there's one that specifically talked about the mens rea, and I haven't been able to find one. I see them in the yellow. So if I could just briefly just touch on the other issues, unless the court has any other questions regarding Count 5. So just briefly, and I'll go backwards, since that's how I started out. Count 4 dealt with the phone call that Ms. Gomez made with the victim's lawyer to arrange travel. We would argue that there was no extortionate communication in that phone call. The lawyer is the only one that brings up any kind of exchange, and Ms. Gomez never really adopts it or agrees to it. She's only talking about the travel arrangement. So we would argue that that's insufficient. Counts 3 and 2 both are... Let me ask you a question about Count 4. Can we look to, I believe there were three phone calls encompassed by that account, or do we have to look at, or by that count, do we have to look at, or do we just have to look at the last one? I believe, Your Honor, Count 3 might have been the one that had several phone calls to it. Count 4, I believe the government's theory, and maybe my brethren, as Judge Anderson would say, might correct me, but I believe Count 4 dealt and was focused on the telephone call between Ms. Gomez and the attorney for the victim. I thought, though, on that call that the district judge considered a series of calls on that day. I think there was another call from the co-defendant to the attorney on that day, but also dealing with travel arrangements and not containing any extortionate communication. On Count 3, which I think is probably the most problematic for us as far as extortionate communication, that was the co-defendant that was involved in that, and we believe that the circumstantial evidence is just insufficient for a reasonable inference that Ms. Gomez was an aider and abetter of that count. As to Count 2, that's a text between the co-defendant. This was the original communication. If I could just finish up, I know I'm in my right. Count 2, that was the co-defendant, the original text to the victim himself. Again, it's close, but I don't think there is quite an extortionate communication there, but certainly the circumstantial evidence would be insufficient for a reasonable inference that Ms. Gomez was an aider and abetter as to that count. I thank the Court for its time. All right. Thank you very much, Mr. Lopez. Mr. Shadley. Good morning, and may it please the Court, Fritz Shadley for the United I'd like to start with the jury instruction issue in Count 5 and focus on what the issue was when raised by the defendant at the district court. The defendant provided and requested an instruction that read as follows, Florida law requires that the government prove beyond a reasonable doubt that the defendant made the extortionate threat with actual malice. That means the government must prove the defendant made the threat with ill will, hatred, spite, or evil intent. Under the Travel Act, there's no requirement that the defendant do or commit the crime that's alleged to be the unlawful activity. There's no requirement that the defendant commit the state law crime. What do you do with the language of and thereafter performs or attempts to perform? So thereafter performs or attempts to perform then refers to subparagraph 3, which is... No, 1, 2, or 3. Correct. Depending on the penalty provision. Correct. Here it was, I believe it was 3, which was an act to promote, facilitate, etc., etc. What is that act? An act to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity. What's that act? The act here would be getting off the plane and going to pick up the money. That's an act to promote the unlawful activity of extortion. Isn't that the travel? That's part of the travel. It's also an act that is part of promoting the unlawful activity. Promoting the unlawful activity of extortion by going to pick up the money. The defendant landed. She immediately texted her co-conspirator. This is in Exhibit 1A towards the end on 3-6 or 3-7. The defendant landed, texted her co-conspirator, got an address, decided that she would go directly to that address, and put that address into her Waze app, and that's in Exhibit 5B. So the defendant took an act, took a step to promote or facilitate the extortion. Facilitating the extortion by being the one who is going to get the money that was being given as a result of the extortionate threat. So it's not like she has to travel, and then land, and then make an extortionate threat for this to be a violation of the Travel Act. She has to commit an act to facilitate or promote the extortion, which is different. I think that's clear both under the structure of the statute of 1952, as well as the case law, which the court has particularly important here are the cases Conway from the 11th Circuit, Rizzo, which is from the 7th Circuit, but was cited with approval in Conway, and then Prince. Those cases hold unanimously, and the 11th Circuit has never held otherwise, that it is not required that there be a violation of the underlying state law crime for there to be a violation of the Travel Act. That's consistent with the structure of the act, as I mentioned, the case law and the government's position at the District Court here. Do you have to define the state law crime in any way whatsoever? So you do, Your Honor, and that's set out, I think, in the case law as well, that a general definition of the crime is acceptable. That the reference to state law is definitional, and it's important, and I think if the court looks at either Rizzo or Conway, Conway, for instance, said arson and violation of Maryland law. Looking at Maryland law now and tracing it back, there are several statutes criminalizing arson under Maryland law. I believe the sections are Criminal Code section 6, 101 through 108, and several of those require willful and malicious burning of a structure in order for it to be a crime. The defendant, Conway, wanted an instruction on Maryland arson, which presumably would have included some reference to this arson. As charged in the indictment, travel in order to commit the unlawful act of arson and violation of the state of Maryland, state laws of Maryland. The court said no, that's not required. It's not required either to prove that the underlying offense happened, referencing Nardello, nor is it required to define the unlawful activity in specific terms as set out by the elements of state law. The court there had the option of doing that and chose not to. It said state law serves the definition. It said arson is a term that's commonly understood by people, providing a simple definition of arson is sufficient. And that's consistent with what this circuit has held throughout its 1952 jurisprudence. The case most on point factually is Rizzo, like I said that's from the Seventh Circuit, but it was cited with approval in Conway here in the former Fifth Circuit. And here the jury instruction included a generic definition of extortion? Correct. And so that was sufficient under the Eleventh Circuit case law as previously cited by the government. But the emphasis, at least in part by defense, is that here the government cited a specific statute in the indictment. It should therefore be required to prove the elements of that specific statute. And in Rizzo and Illinois they charged a travel act in violation of specific Illinois statutes prohibiting prostitution. I think it was statute 1114 to 1118. They said this travel act was committed, was intended to promote the unlawful activity of prostitution in Illinois as set out in these statutes. And despite listing the specific statutes as we did here, the court in Rizzo said again it's not required to nor is the court required to lay out the specific elements of that unlawful activity of that unlawful state offense that was specifically listed in the indictment. It said, as have the courts in this circuit, that the underlying offense that the reference to state law therein is merely definitional. And that's even going way back to the statute itself, consistent with the structure of the statute, which clearly punishes traveling in order to promote a crime, not traveling to commit the crime itself. So therefore it's our position, consistent with the jurisprudence of the circuit, that the jury instruction offered by defense counsel was an incorrect statement of law, and that a correct statement of law was already covered by the instruction given by the court. Even if the court were to disagree with the government on that point, the Nieder case makes clear that jury instruction is reviewed for harmless error. An inaccurate or inappropriate jury instruction is reviewed for harmless error. And there would have been harmless error here if this court were to find that jury instruction proposed by the defendant was appropriate. Had the defendant gotten its way at the trial court, there would have been this definition or requirement of malice, and the evidence throughout showed malice on behalf of the defendant. Starting when the victim's father passed away, the defendant, in her group text in Exhibit 22, immediately says, we can make a fortune of this, and specifically tells her friends, let's threaten him. My sister says that we could even ask for $500,000. The thing is that if these videos go on TV, not only will we eff up their marriage, but the ones in the group who are married as well. We must mention his lover so that he realizes this is for real. Exhibit 1A, the defendant and her co-conspirator refer to themselves as swindlers, and complained they haven't made any money yet by way of their swindler. Most damning, in a voice message sent via WhatsApp from the defendant to her sister, who she kept updated on the daily happenings of their conspiracy, the $500,000. This was malicious. This wasn't even just malicious in the least bad way of having ill will as sought by the defendant. The evil intent, they're laughing about ruining this guy's life and ruining his marriage. This is legitimately an evil conversation. It's the most malicious, apart from threatening life or limb, that they could have been. So any argument here that the fail boast on the legal grounds already presented, it would also fail under the harmless error standard, because there is a boatload of evidence showing the defendant's malice here. Can I ask you to turn to the sufficiency arguments and address Mr. Lopez's argument that with regards to, for example, count four, the communication at issue doesn't reach the level necessary for a jury to find guilt beyond a reasonable doubt? I will, Your Honor, and I'll point the court first to the standard for analyzing a sufficiency challenge like that, where after viewing the evidence in the light most favorable to the prosecution, any rational trier effect could have found the essential elements of the crime beyond a reasonable doubt. I believe that standard is met here. The conversation that was focused on by the government at closing argument and through the presentation of evidence is not the phone call by Ms. Gomez on March 6th, but the call that preceded that contains the actual threat. But which was the one that was charged in count four? In count four, it was charged as telephone call on 3-6, but the government made clear at closing argument that that call was the one made by Ms. Roldan, the co-defendant, earlier, and then immediately thereafter Gomez called and set up her travel arrangement. So that's, our theory there would be an aiding and abetting theory for this defendant here, that she aided and abetted the extortion. And the indictment indicated that that was the call made by Roldan and not by Gomez? The indictment listed both defendants. It had a chart and it said the date 3-6-17, listed both defendants, and it said telephone call. And then beneath that it was charged both directly and as an we know which conversation was at issue? The government made clear, by point of emphasis, at trial and in closing argument, that it was the threat made, and I believe it was referenced directly by the exhibit, 4A and then 4B, at close, that this was the communication that was containing the extortionate threat. And then Gomez's follow-up communication was evidence of her aiding and abetting the previously made extortionate threat. So the actual threat made, which was an exhibit 4A, I believe lines 4 through 5, Roldan tells Pust, the attorney for the victim, that she, meaning Gomez, went to the television station and spoke with the people there. And she had, they gave her the opportunity to interview, they offered her a bunch of things, a series of things on television that could even be in her best interest, but she doesn't want to do that if you're willing to meet with her. So this implied threat or direct threat that she won't go to television, she won't do interviews, she won't do all of these things if you're willing to meet with her. I think in the context of that entire conversation in 4A and the follow-up in 4B and all of the acts in the three or four weeks leading up to that could lead a rational juror drawing all inferences in favor of the verdict and all credibility findings in favor of the government to conclude that the elements of the offense had been met. Counsel, was there any pretrial issues raised by defense that they didn't understand or needed clarification or any challenges to the indictment with regard to its not specifically stating which call or not making it clear that it was aiding and abetting charge? I don't believe so, Your Honor. Okay. I don't think they would. Okay. So that was not raised, I believe was not raised at the district court, was not addressed at the district court. The government and its argument and presentation of evidence made clear to the jury what was the focus of that count. Were counts two and four similarly charged and proven? Were they also based on a Roldan phone call that Gomez then aided and abetted or were two and three based on calls or messages that Gomez herself made? So two and three again are an aiding and abetting theory. Two is the text message on 218 the night of the victim's father's tribute concert. It's the main text message that the co-defendant sent to the victim. Prior to that, her and Gomez are both discussing what to do. Should we text him? Let's ask for $20,000. Gomez is guiding her and telling her what to do. Says, do you have the naked pictures? Use those. And then Gomez provides the phone number for the victim. So all of these communications, I mean, you could look back and say she aided and abetted each communication solely by providing the phone number to her co-defendant. Be like providing someone a gun who you say, hey, go rob some banks. Here's a gun. Split the money with me. They go rob three banks. That could be considered aiding and abetting each of those robberies. So here even just this early communication asking, do you have the nude pictures? Here's his phone number. Could be sufficient to find aiding and abetting part of each of these offenses in two, three, and four. Even more than that, there's specific communication back and forth before and after the threats made by the co-defendant. So the 218 threat is the main threat that initiated the entire extortionate scheme where they say, we have these videos, we have these videos from Vegas and other pictures that are even worse. We'll disclose them unless you agree to negotiate with them. Before that, they're texting back and forth. They agree to ask for at first $20,000 and the defendant said, make sure you have the right phone number. Here's the right phone number. Then on February 20, which is the second charge, which I believe is a phone call. Right before that, again, text message communications in Exhibit 1A. The defendant then asked for $50,000. That's not too much. Look at what he spent in Vegas. So then the phone call is made by the co-defendant and she asks for $60,000. Said if not, we'll disclose all these pictures. It would be scandalous. It would be ruinous for him and his wife. So she aided and abetted at each and every step these threats that were made by her co-defendant. This is set out in the Rosemont case, specifically what's required for aiding and abetting, which is affirmative act with the intent of facilitating, but the court made clear that this comprehends all assistance rendered by words, acts, encouragement, support, or presence, even if that aid relates to only one or some of a crime's phases or elements. Here are the activities by this defendant. All right, Mr. Shealy, thank you very much. I'll be brief. Getting back to the count five, which is what I began my argument with, if I understand the government's argument here today, which had not been made in the district court or under its brief, was that the act of further travel, following the travel, constituted the act as thought in the travel act conviction. I have not seen, I don't think the government cited any case where that's the case. I guess under the government's theory, if Ms. Gomez had been arrested immediately after she departed or deplaned the airplane from LA, then she would not have committed the offense of travel act, because under the government's theory, it was the further travel that was the act in furtherance of, that was required under the travel act. Counsel, didn't he say that it was getting on her Waze app and plugging in the address and making the call back or text, I forget which, to the other individual, the co-conspirator, and setting up the meeting to get the money. Isn't that what they said the act was? Not necessarily the travel from the Yes, I'm referring to the fact that I think under the government's theory now that if she had been arrested as soon as she got off the airplane, she would not have been guilty of count five. I believe that's their theory now. What was the jury charged on with respect to that count? I don't remember what the . . . What were the parties fighting about in a legal sense in the district court with regards to that count, whether or not she took an act following travel or in connection with travel? In the district court, I believe the arguments were, as to count five, the intent and then also whether there was in fact an extortionate act. I don't think there was a battle, not that I remember, I wasn't trial counsel, regarding the act and which act was taken. Was there anything raised in pretrial about the specifics of the I was not trial counsel, but I don't recall from reviewing the record that there was any request for any more precise charge in the indictment. Can you talk about harmless error? It seems like to me that your opposing counsel makes an argument that if there was in fact error because of a failure to give the jury instruction, it would be harmless based on the evidence in the case. Would you talk about that just a minute? Yes, Your Honor. Again, this was circumstantial evidence and in order to find that under circumstantial evidence, there would have to be a reasonable inference that there was in fact this actual malice as opposed to legal malice. Wasn't the jury charged on circumstantial evidence? They were not charged as to actual malice. Weren't they charged from the difference between circumstantial evidence and direct evidence? That's correct, Your Honor. They were and we would just make the argument that the circumstantial evidence here is insufficient for reasonable inference that there was actual malice on the part of Ms. Gomez. The government's reliance on that are those text messages and if you look through those text messages and look through the voluminous number of them, there are several ways that those could be read, especially in the original Spanish, several ways that their statements can be taken. I think that is insufficient to demonstrate actual malice. Everybody in this case, both sides had Spanish speakers that were able to, I guess, express the underlying dynamics of the Spanish language and what actually would have been meant by the text and communications, didn't they? Yes, Your Honor, and I believe all the text and communications that were in Spanish were also translated. I don't think there was much of a fight over the translation as well. Did defense counsel at trial not argue appropriately as to the, I guess, the evidence that would have demonstrated whether or not your client participated sufficiently to be liable in a criminal manner like this one? There was no argument regarding the malice because the district court had ruled that that was not required. On that element, there was no argument. There was an argument raised that following the government's case and also following the defense case, that the evidence presented was insufficient. Okay. Thank you. Thank you. I thank the court for its time. All right. Thank you both very much.